IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re: [N]

| | |
|---|---|
| SELECTED CASES IN WHICH THE CHAPTER 13 TRUSTEE SEEKS RELIEF AGAINST COUNTRYWIDE HOME LOANS, INC., f/k/a COUNTRYWIDE FUNDING CORP. | Misc. No. 07-00203 TPA<br>Chapter 13 |
| RONDA J. WINNECOUR, TRUSTEE,:<br>Movant, | |
| v. | |
| COUNTRYWIDE HOME LOANS, INC., f/k/a COUNTRYWIDE FUNDING CORP.,<br>Respondent. | Related to Document No. 122<br><br>Hearing: October 2, 2008 at 2:00 P.M. |

## MEMORANDUM ORDER

This matter involves 293 Chapter 13 cases in which virtually identical documents entitled *Trustee's Motion to Compel Countrywide Home Loans Inc., fka Countrywide Funding Corp. to Provide Loan Histories and for Sanctions* ("Motions to Compel") were filed by Ronda J. Winnecour, the Standing Chapter 13 Trustee for this District ("Chapter 13 Trustee") against Countrywide Home Loans, Inc. ("Countrywide"). The *Motions to Compel* all allege that Countrywide failed to properly post mortgage payments received from the Chapter 13 Trustee in the form of approximately eight "voucher check" payments that were being made by her during the period of 2005-2007 on behalf of the Debtors in the 293 cases. As a result, according to the allegations of the Chapter 13 Trustee, all of the 293 Debtors had been damaged and the integrity of the bankruptcy process was threatened.

1

On October 18, 2007, the Court entered a Consolidation Order at the above number to allow for a more manageable resolution of the *Motions to Compel*. After the Consolidation Order was signed, a number of the Debtors or their Counsel attempted to formally join in or otherwise actively participate in this matter. At the December 5, 2007 hearing, the Court denied all such requests for several reasons, but primarily because to do otherwise would have needlessly complicated the process, especially since the Debtors' interests would be satisfactorily protected by the Chapter 13 Trustee as implicitly represented by her in filing the *Motions to Compel*. *See e.g., In re Beverly Charlton*, Case No. 00-11849, Document No. 51 at ¶29 (wherein the Chapter 13 Trustee cited her superior knowledge as one of the reasons for bringing the respective action). *See also Chapter 13 Trustee's Report of Fees and Expenses in Response to Order of Court Dated July 15, 2008*, Document No. 129 at ¶29 (citing with approval the Court's conclusion to deny joinder requests made by the Debtors because the Chapter 13 Trustee "was best able to pursue the issues presented in the *Motions to Compel*"). At the same December 5, 2007 hearing the Court referred the matter to mediation at the request of the Parties.

At a June 24, 2008 Status Conference the Parties informed the Court that the mediation had been successful and they had reached a tentative settlement subject to approval by the Court. The Court entered an Order that same date, at Document No. 119, directing the Parties to submit a joint motion by July 14, 2008, seeking Court approval of the settlement, including a detailed explanation of the proposed settlement. On July 14, 2008, a ***Joint Motion for Order Pursuant to Bankruptcy Rule 9019 Approving Settlement and Compromise*** ("Joint Motion") was

2

filed at Document No. 122 by the Chapter 13 Trustee and Countrywide. A copy of a *Settlement Agreement and General Release of Claims* ("Settlement Agreement") memorializing the proposed settlement was attached as an exhibit to the *Joint Motion*.

Broadly speaking, the *Settlement Agreement* provides for a payment of $325,000 by Countrywide to the Chapter 13 Trustee as reimbursement for expenses purportedly incurred by her in pursuing these matters, together with the implementation of various prospective procedural steps to provide a framework for addressing both the affected Debtors' cases as well as any pending future cases involving Countrywide. None of the settlement money is proposed to go to the respective Debtors or their counsel for the damages originally alleged in this regard by the Chapter 13 Trustee in each of the 293 *Motions to Compel*. In addition to the proposed settlement between the Chapter 13 Trustee and Countrywide, the *Settlement Agreement* also included a discrete, proposed settlement of one of the 293 cases, i.e., the "Thompson Matter", involving the bankruptcy case of *In re Rodney and Lori Thompson,* Case No. 02-22982, upon payment by Countrywide of an additional $7,000 to those Debtors and their attorney.

A hearing date on the *Joint Motion* was set for August 11, 2008. Notice of the *Joint Motion* and the hearing date, together with an informative cover letter, were served on the affected Debtors and their counsel of record, as well as the United States Trustee ("UST") informing them that any Response to the *Joint Motion* was required to be filed by no later than August 4, 2008. The Court also ordered that the Chapter 13 Trustee and any attorney who was anticipating receipt of funds and/or compensation from the proposed settlement monies were to file a "standard fee application with the Court including a narrative statement and a detailed breakdown of the time and

3

services, the amount of compensation sought from the settlement funds, the explanation and purpose for payment of the fees or funds to be received and for which approval is sought, and a copy of any fee agreement upon which such payment is based." *See Order dated July 15, 2008*, Document No. 123 at ¶5.

Three Responses to the *Joint Motion* were filed. Attorney Frank Yourick, who represents the Debtors in *In re Kevin and Rose Marie Berkavich*, Case No. 04-28578 and *In re George and Dierda Willis*, Case No. 06-21968, filed an ***Objection to Proposed Settlement and Compromise*** ("Yourick Objection"), Document No. 127. Attorney Dennis Spyra, who represents the Debtors in *In re Jerry and Paula Miller*, Case No. 04-23270, *In re Connie Martino*, Case No. 04-30058, *In re Mark Gunkle and Anita Mascuch-Gunkle*, Case No. 05-25571, and *In re Gregory Olslowski*, Case No. 06-22584, filed an ***Objection to Proposed Settlement and Compromise*** ("Spyra Objection"), Document No. 130. The UST filed ***The United States Trustee's Response to Joint Motion for Approval of Settlement and Compromise Between Countrywide Home Loans, Inc, Chapter 13 Trustee Ronda J. Winnecour, and Rodney and Lori Thompson*** ("UST Response"), Document No. 131.

Two "fee applications" were also filed in response to the July 15, 2008 Order. Attorney Dennis Sloan filed ***Application of Dennis M. Sloan & Associates, P.C. for Compensation as Counsel for Rodney E. And Lori M. Thompson*** ("Sloan Application"), Document No. 128, seeking payment of $4,000 in attorney fees out of the proposed settlement proceeds in the Thompson Matter. Also filed in the nature of a fee application was the ***Chapter 13 Trustee's Report of Fees and Expenses in Response to the Order of Court Dated July 15, 2008*** ("Trustee's Report"),

Document No. 129. The Court found the *Trustee's Report* to be insufficiently informative and non-responsive to its July 15th *Order* for a number of reasons. As a result, on August 4, 2008, the Court issued a *Supplemental Order*, Document No. 132, directing the Chapter 13 Trustee, along with the law firm that is representing her (Babst, Calland, Clements & Zomnir, P.C.) to file a *Supplement to Trustee's Report* correcting the deficiencies by noon on August 7, 2008, so the scheduled hearing date could go forward as planned.

In advance of the August 11, 2008 hearing, the Chapter 13 Trustee did file a *Supplement to Trustee's Report*, Document No. 134, which the Court also found to be lacking in sufficient information so as to allow it to approve the proposed settlement. Prior to the hearing, the Court caused the Chapter 13 Trustee's Counsel to be informed that the *Supplement to Trustee's Report* remained insufficient but that due to the lack of time for any further corrective action in advance of the hearing, the Court would permit the hearing to go forward as scheduled in the hope that perhaps the necessary information would be furnished at the hearing itself – something that did not come to pass.[1]

In considering the *Joint Motion* and related filings, and after having now heard from Counsel representing various interested parties at the August 11, 2008 hearing, the Court is guided

---

[1] At this same hearing the Court considered and approved a separate settlement between the Debtor and Countrywide in the case of *In re Sharon Hill*, Case No. 01-22574. Although the *Hill* case was one of the 293 in which the Chapter 13 Trustee filed her *Motions to Compel* it has always been on something of a separate footing from the others because the Debtor in that case had already been pursuing relief from Countrywide, through her own counsel, at the time the *Motions to Compel* were filed. (See **Motion to Enforce Discharge**, Document No. 59, and **Amended Motion to Enforce Discharge**, Document No. 165 filed in *Hill*). Although the Chapter 13 Trustee has never been formally joined as a party in the *Hill* enforcement of discharge matter (a pending motion to that effect by her has yet to be ruled on by the Court, see Document No. 170), she has been an active participant in the process and claims that the case has served as a vehicle for much of the discovery conducted by the Chapter 13 Trustee related to issues raised in this proceeding.

5

in its task by the stated, original purpose behind the filings of the *Motions to Compel*. As aptly summed up by the Chapter 13 Trustee herself:

> The Countrywide litigation was commenced by the Chapter 13 Trustee to ensure that Countrywide was timely cashing monthly disbursement checks and properly applying the funds to the affected Debtors' accounts. The Chapter 13 Trustee also wanted to verify that the Debtors' records accurately reflected all of the Chapter 13 Plan payments and that no impermissible fees or expenses were added to the Debtors' accounts as a result of Countrywide's failure to timely cash checks and apply plan payments. Lastly, the Chapter 13 Trustee wanted to promote the integrity of this Court and the Bankruptcy system by seeking full disclosure from Countrywide regarding the status of the Debtors' accounts.

*Supplement to Trustee's Report* at ¶4, Document No. 134 filed August 7, 2008.

The Court is also mindful of its obligation to scrutinize the proposed settlement to ensure that it is "fair and equitable" to the persons who did not settle but who would nevertheless be impacted by the settlement, *i.e.*, the individual Debtors. *See, e.g., In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d. Cir. 2006). The need to proceed in such a manner is particularly acute in this case because one of the underlying premises of the *Motions to Compel* was that the Debtors were being damaged by Countrywide's actions (*Motions to Compel* at ¶35) and were in fact "those who are most affected by Countrywide's mismanagement" (Id. at ¶34). Moreover, the Court denied all requests for joinder by individual Debtors because of the explicitly stated assumption, not disputed by the Chapter 13 Trustee, that she would be pursuing this matter on behalf of all the Debtors. *See Transcript of Hearing on Motions to Compel*, December 5, 2007 at p. 26, Document No. 26. The Court must therefore be vigilant in making sure that any settlement adequately protects the interests of these Debtors.

6

After viewing the proposed *Settlement Agreement* through this lens, the Court has mixed impressions because, although the proposed settlement is commendable in many respects, it does not appear to address all of the critical objectives underlying the stated purposes for filing the 293 separate *Motions to Compel* in the first place.

On the one hand, the Court does not believe the proposed *Settlement Agreement* in its current form has sufficient protections for the remaining 291 Debtors upon whose behalf the *Motions to Compel* were brought.[2] While there definitely appears to be good intention in this regard, the Court is concerned that the essential substance of the *Settlement Agreement* leaves too much open to future contingencies to be worthy of current approval.

At the August 11th hearing, Countrywide and the Chapter 13 Trustee expressed optimism that the "reconciliation process" set forth in the *Settlement Agreement* can be completed expeditiously after settlement approval in such a manner so as to allow for a "prospective" resolution of the "Debtor issues" originally raised by the Chapter 13 Trustee in her *Motions to Compel*.[3]

---

[2]  The debtors in *Hill* and *Thompson*, having struck separate settlements with Countrywide, are no longer in the group of Debtors who will need to rely on the proposed settlement between the Chapter 13 Trustee and Countrywide to protect their interests.

[3]  Although the Parties represented the "reconciliation process" as one of the key features of the proposed settlement, the actual mechanics of that process are left surprisingly vague in the *Settlement Agreement*. *See id.* at ¶3(d)(i). Paraphrasing that provision, the Parties have merely agreed that Countrywide will reconcile its records regarding all amounts it believes are due from each of the affected Debtors and then provide that information to the Chapter 13 Trustee. If the Chapter 13 Trustee agrees with Countrywide's figure, the matter is resolved; if the Chapter 13 Trustee disagrees then Countrywide will either adjust its records to conform to what the Chapter 13 Trustee believes the figure should be or provide her with information to show why it believes her records are inaccurate. If the Parties cannot come to an agreement, the matter will be submitted to the Court for determination. This seems to add very little to the process already in place following submission of the Trustee's Final Report and Account, a procedure already available to the Parties. Furthermore, as is indicated above, no time frame is specified for any of this to occur. At the August 11th hearing the Parties informed the Court that they had not yet worked out the details of this reconciliation process but expected to do so after the settlement was approved. The Court is not comfortable with approving a settlement when the implementation of such an important part thereof is still to be determined. The Parties also said that one potential, additional benefit to the Debtors as set forth in this provision of the *Settlement Agreement* is that Countrywide may agree to waive loan charges to the extent its records differ from the Chapter 13 Trustee's. However, without more than that, the Court is unwilling to presume that there will be any such waivers except perhaps with respect to *de minimis* differences, so that aspect of the proposed settlement bears little weight on whether it should be approved.

However, no set timetable for doing so is spelled out and there would not seem to be any real impetus for the process to be completed once the settlement is approved. Furthermore, no defined procedure is identified or put in writing, the Parties simply agreeing in concept and "agreeing to agree" to the details of the process at a later time.

Under the *Settlement Agreement*, Countrywide secures its release of future claims related to issues raised in the *Motions to Compel* and the Chapter 13 Trustee is paid. As noted, there is also room for uncertainty as to how the contemplated reconciliation process will turn out. At the August 11th hearing both Parties indicated an expectation that the "reconciliation" would show that no improper fees had been imposed on any of the Debtors' loans, but neither one was in a position to make a commitment to the Court to that effect. To the extent the Parties' optimism in that regard is misplaced, it would be the Debtors who would suffer the consequences, with minimal protection afforded to them at that point by the *Settlement Agreement*.

The Court's concern over the uncertainty surrounding the reconciliation process is compounded by the proposal that the entire $325,000 settlement amount go to the Chapter 13 Trustee with none of it allocated to the Debtors despite the allegations in the *Motions to Compel* that the individual Debtors had been damaged by Countrywide's actions. The prayer for relief in the *Motions to Compel* ask for a total sanction of $3,000 in each of the cases, with $2,000 to go to the Chapter 13 Trustee and $1,000 to go to counsel for the Debtor. Applying this 2/3-1/3 split as a rough guide, the Court would have anticipated that over $100,000 of the settlement fund would be designated to go to the Debtors or their counsel rather than the $0 that is actually being proposed. Perhaps there is a justifiable reason for such a one-sided allocation, but the information which has

been submitted to date concerning the attorney fees and other expenses allegedly incurred by the Chapter 13 Trustee in pursuing this and related matters is not sufficient to make that case.[4]

On the other hand, despite the misgivings expressed above, as noted, there are positive aspects to the proposed settlement as well. The Court is impressed that the Chapter 13 Trustee and Countrywide were able to reach an agreement on what had seemed a potentially intractable dispute, and moreover, an agreement with some praiseworthy features. The proposals for enhanced communication between the chapter 13 Trustee and Countrywide with respect to the final accounting process and the issuance of a "payoff statement" to debtors, among other things, have the potential to significantly improve the Chapter 13 process in this District. For this reason, although the Court is not willing to approve the *Settlement Agreement* in its current form because of its failure to adequately protect the rights of the 291 affected Debtors, the Court nevertheless believes the *Settlement Agreement* provides a solid foundation for an overall resolution of the issues before it. As such, the Court believes the Parties should be given an opportunity to take some additional steps to alleviate the Court's concerns and reservations in approving the *Settlement Agreement* in its current form in hope that a revised settlement can be proposed which ultimately meets with the Court's approval. Therefore,

---

[4] In fairness to the Chapter 13 Trustee, part of the consideration for the $325,000 settlement amount is designated toward resolution of all claims she may have in the *Sharon Hill* matter. *See n. 1*, above. The Court has previously recognized the contributions of the Chapter 13 Trustee in that specific matter but they are not necessarily related to the issues raised in the *Motions to Compel*. Unfortunately, the *Settlement Agreement* provides no breakdown or allocation of the settlement funds for this purpose. It is for this reason the Court has required the Chapter 13 Trustee to detail her services and expenses in this regard.

9

*AND NOW*, this *14th* day of *August, 2008*, with the above as background and for the reasons stated further on the record at the August 11, 2008 hearing, it is hereby **ORDERED, ADJUDGED and DECREED** as follows:

(1) The *Joint Motion* is **GRANTED** in part, insofar as it seeks approval of the settlement of the "Thompson Matter" upon the terms and conditions as set forth in the current version of the *Settlement Agreement* with the *Sloan Application* to be approved by separate order. In all other respects, consideration of the *Joint Motion* is **STAYED** subject to the further provisions of this Order;

(2) *On or before August 18, 2008,* Countrywide shall provide the Chapter 13 Trustee with an updated loan history and payoff statement for the loans in the cases involving the *Yourick Objection* and the *Spyra Objection* so as to enable the Chapter 13 Trustee to complete an audit in those cases, as "test cases", to further support the Parties' belief that no fees or charges of any kind were added to any of the loans as a result of Countrywide's alleged mishandling of any payment voucher checks as set forth in the *Motions to Compel*;

(3) *On or before September 3, 2008,* the Chapter 13 Trustee shall file with the Court a *Status Report* on the results of her completed audits in the cases involved in the *Yourick Objection* and the *Spyra Objection* (as well as in any other cases in which she may have completed an audit as of that time) with copies of said *Status Report* also to be served on Countrywide, the UST, and Attorneys Yourick and Spyra;

(4) **On or before September 3, 2008,** the Chapter 13 Trustee shall file a *Second Supplement to Trustee's Report* to provide additional information, consistent with the requirements of the Court as stated in its prior Orders and at the August 11th hearing, to support the justification for her recovery of attorney fees and expenses as part of the settlement of this matter in manner and form as contemplated by the Court's *Local Rules* as they relate to filing fee applications. *See L.R. 2016-1* and related rules, forms and procedures. In particular, both the Chapter 13 Trustee and her law firm shall provide:

    (a)    time records that provide detailed explanation of the tasks performed and which, to the extent possible, separately assign time entries to those actions/services involving the present case and those involving the individual proceeding at *In re Sharon Hill*, Case No. 01-22574;

    (b)    a Category Listing consistent with *L.R. 2016-1* shall be included to show a breakdown, explanation and/or general purpose for the various time entries;

    (c)    in the case of Chapter 13 Trustee office employees, an explanation as to the basis for the asserted hourly rate to be applied shall be provided, including the job title of the person performing the task as well as identifying paralegal services or simply office staff services; and,

    (d)    to the extent that any of the time entries may reasonably be deemed to be clerical in nature, a justification as to why the Court should consider them as representing compensable expenses for purposes of determining whether the settlement should be approved. *See generally, In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3d Cir. 1994);

(5) **On or before September 3, 2008,** the Chapter 13 Trustee and Countrywide shall jointly report back to the Court whether they have been able to reach an accord regarding the modification of the *Settlement Agreement* which would address the concerns of the Court with respect to protection of the Debtors interests in the reconciliation process by either:

11

    (a)    waiting to approve any settlement until completion of the reconciliation process as to all remaining 291 cases thereby assuring the identification of any problem issues revealed thereby, and if possible, their respective resolution; or,

    (b)    providing a mechanism whereby Debtors will be protected by Countrywide agreeing to pay their legal expenses incurred in the event of successfully challenging any amount later to be claimed by Countrywide to be due on any of the affected loans as a result of the issues raised in the *Motions to Compel;* or,

    (c)    such other approach as will substantially protect the interests of the Debtors if the instant matter is to be resolved prior to the completion of the 291 reconciliations.

(6)    ***On or before September 3, 2008,*** Attorneys Yourick and Spyra shall each file ***Fee Applications*** compliant with *L.R. 2016-1* for all cases involved in this matter in which they allege they are entitled to receive attorney fees or expenses, *provided however*, that they may combine applications for multiple cases into a single application so long as the information they provide is broken down for each individual case involved. ***On or before September 20, 2008***, any ***Responses*** to the *Fee Applications* shall be filed by any interested parties.

(7)    ***On or before September 3, 2008,*** Countrywide shall file a *Reply* to the *UST's Response*, particularly addressing the points raised in Paragraphs 8 and 9 thereof requesting clarification as to the scope of the releases provided in the proposed *Settlement Agreement* on any claims or causes of action which the UST has or is currently prosecuting, or in the future may pursue against Countrywide, and the non-disparagement provision found at Paragraph 3(p) of the *Settlement Agreement* (including whether Countrywide is willing to delete or modify it as requested by the UST); and,

(8)   A further *Status Conference* in this matter is scheduled for *Thursday, October 2, 2008 at 2:00 P.M.* in Courtroom D, 54th Floor, U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219.

_____
Thomas P. Agresti
United States Bankruptcy Judge

**FILED**

AUG 1 4 2008

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA